Two cases will be submitted on the briefs. The first case for argument is number 2008-1479, Vita-Mix v. Basic Holding. Mr. Mobius, the appellant, you have taken nine minutes for your opening argument and six minutes for rebuttal. You may proceed. May it please the Court. There are two primary issues that I want to address with respect to Vita-Mix's direct appeal. The first is the District Court's erroneous construction of the claim term, preventing the formation of an air pocket, and the second is the District Court's erroneous summary judgment of no patent infringement and no trademark infringement. With respect to claim construction, the intrinsic evidence shows that the District Court's importation of a limitation excluding all stirring was wrong as a matter of law. And with respect to the summary judgment issue, Vita-Mix came forward with significant evidence that establishes each disputed element of its claims. In contrast, Back to Basics failed to present evidence that even if believed, would establish all elements of its claims. Are we talking now about really the direct infringement allegation? Even if we agree with you with respect to the change in claim construction that's required, it's not clear to me that at least with respect to inducement and contributory infringement, that would necessarily impact anything we do with respect to those allegations. Your Honor, I believe that really under either construction, there is inducement and contributory infringement. There certainly is. Vita-Mix is evidence of direct infringement. My question is, if we were to agree with you with respect to the difference in claim construction, that in and of itself doesn't really impact the conclusion, at least the issue with respect to inducement and contributory. Am I right about that? I think that it would dispose of that issue because the District Court, for the most part, held that there was no inducement or no contributory infringement due to the absence of direct infringement. There were also issues regarding intent that can address. But the primary thrust of the District Court's opinion was the absence of direct infringement due to the stirring issue resulted in a finding of no direct infringement or inducement or contributory infringement. But even if we were to find direct, it's quite possible, is it not, to affirm on inducement and contributory infringement for other reasons? It would be possible for other reasons, yes. But the evidence that Vita-Mix presented with respect to both, we believe, on intent and with respect to the existence of significant non-infringing uses, warrants reversal on those issues as well. But you're saying basically that the indirect infringement would depend upon the direct infringement itself, right? Yes, you must show direct infringement. And you're also challenging the fact that the District Court changed the definitions as she started going through the process? Yes, and the key issue with respect to the change of the claim construction is that the construction that the District Court used was wrong as a matter of law, that there's no support in the intrinsic record for an exclusion or a limitation excluding all stirring. That error permeates the entire summary judgment ruling with respect to infringement, both direct and indirect infringement. And then with respect to the indirect infringement issues, for inducement, Vita-Mix presented evidence that, I think, it establishes the specific intent to cause the direct infringement for inducement in that Back-to-Basics clearly knew about Vita-Mix's patent before it sold a single unit of the accused products. And it did not, despite that knowledge, did not seek an opinion of counsel. And then it produced products and sold products where the physical configuration of those products meets every one of the structural limitations of Claim 1 of Vita-Mix's patent. As a result, when those products are used, they will infringe by default. You turn the blender on with the device inside, and it will infringe. The only way to avoid infringement in that situation is if a user will specifically and intentionally manipulate the device in a way to avoid infringement. But this default, this is for a second right. I mean, the instructions, at least some of the customers, reflect a non-infringing use. So what you're left with is some short period of time. I think the instructions, none of the instructions, we believe, teaches a non-infringing use. And at a minimum, there's a genuine issue of fact. But the instructions say that the user should stir with the stir stick while scraping the sides of the container. Aren't those the instructions? There are some instructions that Back-to-Basics began using more than a year into this case and after they had sold more than 10 million infringing units. Let me make sure I understand, because this is an important point for me as well. There were the original instructions, and then the November 2007, is that the right date, the second set of instructions where the scrape-the-edge material came in? And your contention is that quite apart from the 2007 instructions, that there's inducement with respect to the original instructions, which were silent on the scraping and the edge and the stirring. Is that fair to say? Yes, that is our position. But you think there's inducement as to both, but you say surely as to the first set. That is correct. And for a number of the instructions, Back-to-Basics never disputed that the instructions were silent with respect to any manipulation of the device that would lead to non-infringement. For others, there is a question of fact as to whether or not those instructions will lead to a non-infringing use. But then Vitamix also presented a consumer survey that showed that when customers use the device or use the accused products for the first time, the vast majority of them will use it in an infringing manner. And the district court didn't let that in, right? The district court did not let that in, saying it was not relevant. But then later in the district court's opinion, the district court relied on the survey as relevant. And in fact, on appeal now, Back-to-Basics has not tried to even support the district court's exclusion and instead has conceded that it is relevant on at least some issues. So, with respect to contributory infringement, the only issue with respect to contributory infringement is whether or not there are substantial non-infringing uses for the accused products. And Back-to-Basics has identified two alleged substantial non-infringing uses. The first I want to talk about is they say don't use the device at all. That would be a substantial non-infringing use. But not using the device can't be a substantial non-infringing use for the device. Well, I think they say you don't. You just don't. Manipulate it. Manipulate it. There's a question of what happens in the default setting, right? But I think their point is you can run the blender without using the device. When you say using the device, you mean using the plunger. Right. Not putting the plunger in the device at all. Correct. As opposed to manipulating the plunger or not manipulating the plunger. Correct. There's two, I think they argue, if you start… But if they don't use that, why is there infringement? Well, I think the question is, is that a substantial non-infringing use for the device itself? Because the contributory infringement is the sale of a component part that here it's specifically configured to infringe. All of these non-infringing uses could have been, can also be performed with a plunger that's configured as the prior arc that would only be used to break up an air pocket after it's formed. But even if you do not hold the stirring mix stick, right, wouldn't it move because of the movement of the blender itself? It's going to move, isn't it? I mean, it's not going to be standing firm above the pocket. In fact, it will. Vitamix presents significant evidence, including its experts' opinion, that due to the physics of how the fluids move in the blender, what it essentially creates is a vacuum that will draw the stir stick and maintain it both adjacent to and above the blades and free of contact with the sides of the pitcher, which are the two limitations that must be met for the method. With the prior, that specifically occurs because the device or the plunger is configured so that its cross-sectional size approximates the cross-sectional size of the member associated with the blades. If the device was not configured to have that size that approximates, then yes, it most likely would move. But because it's properly sized, it's drawn into the center of the mixing fluids and maintained in exactly the infringing position unless somebody grasps the top of it and moves it in a manner where it would either not be adjacent to and above the blades or where it would be in contact with the sides of the pitcher. But there are all these design features that include the O-ring and the ribbing. All of those are designed to promote a non-infringing use, are they not? Well, that's their argument. With respect to direct intent, their intent in designing the machine, or direct infringement, their intent in design is not relevant. Am I right? I mean, did I get a yes or a no on this yet? I don't think those are relevant issues. They claim that they are relevant, but I don't believe that they are. So you agree with the fact that many of the designs of the accused are designed to promote other uses, non-infringing uses. You agree with that and you just don't think they're relevant? No, I don't think that they're designed to promote. I think they're designed to, if somebody uses it in a non-infringing way, for example, the O-ring will prevent marring on the side of the pitcher, but they don't promote this non-infringing use because they never teach the non-infringing use. These instructions are silent on the non-infringing use. Wait, all the instructions, all the advertisements, they don't go to the non-infringing use? Just the stirring? No, I believe that the instructions that they distribute with the product teach people to insert the device within the pitcher and operate the blender. They don't teach stirring. Some of them teach rotation of the device, but none of them until, like you pointed out in November 2007, after they sold 10 million units, mentioned anything about stirring whatsoever. And so the fact that the machine is capable of a non-infringing use does not mean that there is not direct infringement. The question is whether or not that direct infringement occurred, and under this court's established case law, the sale of a machine that's capable of infringing use, accompanied by instructions teaching that infringing use, constitutes evidence of infringement that's sufficient, certainly to survive summary judgment. Was the, just on the O-rings, were the O-rings on the machine prior to November 2007? There are some machines that had O-rings, and there are some machines that they sell without O-rings. You're into your reply and cross-appeal time if you want to say it. I'll say it. Thank you. Mr. Laycock. May it please the Court. I'm Larry Laycock of the Workman-Neidiger Firm, appearing on behalf of Basic Holdings. The facts and governing law in this case combine to demonstrate that the claim construction, as decided by the district court, was absolutely correct as a matter of law. In addition, the findings of non-infringement must stand, based on the complete lack of evidence, and likewise survive this challenge, because they were appropriate as a matter of law. Let me see if I understand something, just before we get going into the claim construction, because I found this to be a somewhat unusual claim. If I am using the device, let's say, and I turn it on, and let's assume, I'm not sure you accept this, but let's assume for purpose of argument that the device, that the plunger stays in what Vitamix calls the default position, in the middle, for a period of time while I put in stuff, and then I go over and putter around the kitchen for a few seconds, and then I come over and I stir for a while, and then I stop stirring and I go putter around for a while. Are those two instances of infringement with a period of non-infringement in the middle, or is it all non-infringement because I stirred, I gave it two or three spins around the edge? Well, the district court was correct when it described the process that's urged as an infringement position, this sort of a few seconds of infringement and then not infringement, as a Frankenstein method of approaching the infringement process. Well, but let's take it the other way around. Many seconds of the plunger sitting there while the machine is running and a few seconds of scraping the edge with the plunger. We only need to turn to Vitamix itself and the intrinsic record here to determine that it was at all times. You'll recall that they added... What was at all times? What they said was that at all times the stir stick must be kept or prevented from touching the side and moving to the side. It can't be that broad because that would mean if at some point in the course of the first year that you own the thing, you scrape the edge, then you don't ever infringe. It's each use of the product. If I'm using the product for half an hour, as long as I stir once in minute 29, no infringement for the entire half hour. That's your position? That would be correct for a couple of reasons. First, they disclaimed. It was Vitamix that clearly disclaimed and disavowed a stirring operation. They distinguish. In fact, at 1018 of the appendix, they say that because the method is completely distinguishable from a stirring operation. This goes to a couple of temporal terms. The problem with that is it's one thing to say that stirring is not within the scope of our claim, which is to say that you don't infringe when you stir. It's another thing to say that if you ever stir during the operation of the machine, then there is no infringement even when you're not stirring. The problem with that, Your Honor, is they're between the rock and the hard place on this. If they say that this default position actually constitutes an infringement, what they're really saying is that all of the prior art, and you find an accused product that just has a tamper that is placed within a blender, that that's infringement. If you just leave it in what they call, and there is no such thing as a default position because the evidence in this record says and demonstrates, both video evidence as well as other evidence, testimonial, demonstrates that that moves around just as we have noted previously in this argument. So there is really no default position. But assume there is. And if that's the situation, and right into an invalidity problem because you've got Jacobson, Wayne, Harris, and that's exactly why at page 1018 of this record they narrowed this claim down as far as they did. And that's why the judge was correct in making this claim construction because without that they fall squarely into all of these other products that have a tamper and just let it come down. And in the case of Jacobson they acknowledge in the course of the prosecution that that particular piece of prior art had the appropriate cross-sectional value. It's right in the right place. And the examiner said, you've got an invalidity problem. That's when they came in at 1018 and they said, no, we distinguish completely the stirring process because if you stir at all you're going to create this situation, actually enhance the ability to create air pockets. And that makes it impossible to prevent air pockets. If you look at 1016 and 1017... Can we enhance the creation? Oh, absolutely. In fact, I draw your attention, if you go to 1016 of the record with me, at 1016 of the record it says, the cited prior art relates only to stirs which at best can only dislodge the air pocket once formed. Continuing on, if you go to the bottom of page 1016 of the record, they say, in response, in fact, it would be undesirable to move the plunger because then the air pocket could be allowed to form. Well, that's just to say that if the plunger is not moved the air pocket never forms. Not that stirring actually causes... Well, let's go on. In other words, the air pocket would... Well, go ahead. Let's go on to 1017. Okay, that's fine. Middle of the page. This distinguishes stirs in that after the formation of the prior art pocket they must be moved to dislodge the same. So this brings us to the prevention issue, Your Honor. Remember, they say in their claim you have to prevent the formation under all circumstances. An analogous situation would be, you know, if you've got a forest fire and it's burning the forest down and you finally put it out, you haven't prevented a forest fire. If you get an air pocket at any time, let's say you stir. In your scenario, you stir and you've got an air pocket because that would allow it to form even according to Vitamix. Under that situation you've not prevented in that blending process an air pocket. And they chose the words. Vitamix chose the words to prevent at all times the formation. That's what this claim requires. And so the judge was correct in the claim. That's how they distinguish from prior art, though. I'm sorry. That's how they distinguish themselves from prior art. It is precisely how they distinguish themselves from prior art. And they had to avoid that in order to anticipate the prior art. Precisely so. The question that Judge Bryson asked, if in fact there is an infringing use for one minute, is that sufficient? Well, I would submit, Your Honor, that it would... Yeah, if there is a complete infringement for one minute, that would be... It would require that fluid be added as according to... Does that matter whether or not you have 29 minutes of non-infringement? If you have formation of an air pocket during that 29 minutes. In other words, if you want to pick and choose just that minute and say, this is infringement, in that minute you would have to perform all the steps of the method. That is, you would have to add the fluid, you would have to prevent the formation of the air bubble, you would have to maintain the plunger, or in our case, we call it a stir stick, for the reason that it is a stir stick. And you would have to have all of those events take place in the course of those seconds. Right. And if you don't have that situation, and that was never shown, there is no evidence, even, for example,  that they point to in the Tom Daniels experience as part of the evidence and the references that they make here today, in each of those they don't have any evidence in this scenario. You don't have all of the steps performed. But let me see if I understand your answer to Judge Gallardo. You are saying, I think, that if they start out in the kitchen, pour the fluid in, you turn it on, lift the plunger in, and you walk away and stand back for 26 seconds, and then you start stirring, you have 26 seconds of infringement, including the time taken to pour the fluid in. What you have under those circumstances, first of all, is indeed not a plan. I understand you are running to validity, but to get your answer to Judge Gallardo is clear in my mind. You are saying that would be a period of infringement, correct? I do not concede that, Your Honor, because during that period of time, again, they would have to show that you prevented all, there is no evidence that there is any, and this is the record that the court had to deal with, but there is no evidence that a situation occurred where all of the events necessary, think of this plan, you have very specific apparatus-related claim elements, you have very specific steps, and they have temporal limitations you have to maintain and prevent over the entire period of time, and the court was clear when it said during the time the blades are running, because we urged the claim construction to say during the entire period of time. But the blades are running for that 26 seconds, are you saying that because of the enablement problem that Dr. Rashidi referred to, that there is never prevention, this just doesn't work and therefore no air pocket is prevented, then therefore there is no infringement? That's part of the argument, but it's also this issue, and we urged in the claim construction that the entire process be considered. In other words, don't split this into little 26-second segments. The claim construction is  there is  prevention, there is never   therefore no air pocket is prevented, and therefore there is never infringement, and therefore no air pocket is prevented. It's a hypothetical situation. It's never been proven in this case. There's no evidence that that ever occurred. Well, see, the problem I think you have is that we did this on summary judgment, and we did it on summary judgment with the district court judge excluding Vitamix's survey evidence and its expert, and it seems to me that makes it a much closer question. We are not here deciding ultimately the question of infringement but only whether or not summary judgment was appropriate. Well, and that takes us back to the question that you asked before about what you would really prove in terms of infringement. There is no evidence even under the scenarios. Even if you assume and take all of the evidence offered by the survey, which was considered in part, it still doesn't reach the level of proof of all of the elements being present here. There is no direct infringement for the reason that there is under the appropriate claim construction no showing of all of the elements as a matter of law. They have not met their burden. Beyond that, if you turn to the indirect, there still is no proof in terms of intent. You have the design features, as the court noted. In the design features, it is designed to stir. They would call it in every instruction manual, 2007, November, and before, it is referred to as a stir stick. Move the stir stick, turn the stir stick. The ergonomics of that are made so that it actually in this ball and socket configuration actually facilitates the  substantial non-infringing use. And they admit that. There is a candid admission by everyone that matters on the Vitamix side of the case that that constitutes a substantial non-infringement and they say that it exists. They admit it. There goes contributory infringement. On inducement, again, there is no intent. They have to show specific intent and here we have a situation in which you have, every effort is to demonstrate stirring. The packaging shows stirring with the stick contacting the inner surface of the pitcher. You have arrows in the bottom    they say that there is no intent. We call it a stir stick. There can be no specific intent under this particular case. It has the same function, however, by calling it a stir stick, we are drawing attention to what was disavowed and disclaimed completely. If you interrupt that infringement determination, you push the claim back into an invalidity position because even the products of Vitamix would not be an infringement. Did the court interpret the claim in order to avoid invalidity? Yes, of course. It was bumping up against the prosecution history in all events. The court did not interpret the claim in order to  invalidity. The court interpreted the claim in order to avoid invalidity. The court interpreted the claim in order to avoid invalidity. The court did not interpret the claim in  avoid immunity when a cross appeal was appealed. crime in order to avoid immunity. The court    the crime in order to avoid immunity. The court did not interpret the crime in order to avoid immunity. The court did not interpret the crime in order  avoid          order to avoid immunity. The court did not interpret the crime in order to avoid immunity. The court did not interpret         did not interpret the crime in order to avoid immunity. The court did not interpret the crime in order to avoid immunity if  order did not interpret  crime in order to avoid immunity in order to prevent the crime in order to prevent the crime only in ethical convenience pages of the record scan them here the picture a company the stirring motion with arrows and occurred in a manner that causes contact with the inner surface that you see in the picture you see these instructions among others that have incorporated these errors these were in the briefs the packaging demonstrated that the stir stick contacted the inner surface of the picture he was actually shown this is the little mark that shows up that's the o-ring hitting the surface precisely so the packaging demonstrates it instructs the user to use the stir stick to break up air pockets intended to be broken up finally if you look examine the video information here in   will show either contacts with the stir stick surfacing a bubble showing that the air pockets are broken up and the presence of an air pocket they also show that there is no default position you let the stir stick go it continues to rotate and turn as mentioned by your honor and the trailer fails to reach that default position that was an attorney construct and at best the data was manipulated to try and show their position but it really showed that you have this turning up very well thank you Mr. Chairman I would like to make a few points I'd like to hit here is with respect to back to basics arguments the most striking feature of their arguments today is aside from the claim construction every argument was directed towards weighing and balancing the evidence what vitamix showed and what back to basics showed why they disagreed with what vitamix showed if we are here after a jury trial that would  not cause direct infringement exists where the accused infringer knew or should have known that their actions would result in direct infringement such knowledge of a result exists where there is the patent for infringement and where there are sales of products that are capable of infringing use that's exactly what we have here so if you follow the case law exactly under the patent law you will find that there is no direct infringement of the patent and there is no direct infringement of the patent and there is no direct infringement of the patent    no   of the patent and there is no direct infringement of the patent it is exactly what we have here but even with intent though isn't it a fact that we need to show direct infringement correct that there is an actual direct infringement if under the claim language as interpreted by the lower court there cannot be any direct infringement since the invention that is patented under the claim is the absence of the formation of the bubble you're trying to avoid the formation but they are doing it after the formation so they are correcting it after the formation of the bubble so if you take it on that basis that the claim as interpreted by the lower court is correct can there be indirect infringement under either construction whether it is the district court construction or the construction used to grant infringement if you were to stay with the district court construction or to reverse it under either there would be direct infringement that is under the line of cases the moleculon case the golden case the most recently those cases    which are subject to the construction issue so on that direct point there would be infringement for that initial period it is important with respect to the construction issue that the claim there is a discussion about stirring but stirring never appears in the claim itself and what we are talking about is the movement of the stir stick and not all movement is precluded the claim speaks directly to this point it says there are two things that must occur horizontally within that area where the device must be those are the two limitations that are important here that talk specifically about what you can and can't do with the plunger the specification discusses stirring when you go to the air pocket  prior art before the court only talked about stirring to disperse and break up the air pocket which the inventors never tried the claim the claim calls for preventing the formation of the air pocket prior art disclosed using it after the air pocket forms to stir and break it up can I direct you to the cross appeal of the court to make certain of the evidence I think is mainly parts of Dr. Rashidi's testimony the district court was an error . the problem there this is the part of the  . The  court did not present Dr. Rashidi's evidence . They never cited once to his opinion . His opinion was there needs to be a combination of five references to render the claim obvious. They argued four in summary judgment . That is not in the record anywhere below. That argument was waived. In their reply brief they raised a new argument. They divided it into 4,000. Is the 4,000 prior as well as the 3600? That was unclear. They are the same thing. It was a page submitted into the prior. Is that the difference? They  functionally the same. That is what the 5,000 is all about. The 5,000 was a trademark issue. It is not 5,000 watts. It is quite powerful. None of  have a standard for cross sectional size. Back to basics argument was it would be apparent to anyone looking at the figures. That is not the standard for in validity. It has to disclose the approximating cross sectional size to meet the all elements rule. Back to basics did not present evidence that under any construction could establish in validity. A change in construction does not affect that and the district court should be affirmed on that. Let me ask you a nitty gritty question. If we assume in Jacobson that the rod is approximately the same diameter as the rod and if the structure of the device is according to the claim then necessarily there will be prevention of the formation of an air pump. If Jacobson is the same structure then it would necessarily prevent the formation of an air pocket.  Jacobson were the same structure it would necessarily prevent the formation of an air pocket. What about Jacobson is not the same? Let me assume for the moment that the claim is the approximating the cross sectional size. That is the crux of the distinction of Jacobson for purposes of invalidity. What Jacobson also teaches is that you rotate it with a little boot on the end of Jacobson that is used specifically for breaking up already formed air pockets. But if you don't turn the little boot you just leave it there in one spot then it performs the patented method if the hub and the rod are approximately the same diameter. I don't feel competent to answer that because Jacobson is a line drawing and it's in a hypothetical situation here where it's impossible I'm not sure there is even a commercial volume of Jacobson where that can be verified as to what it is. There's no evidence in the record on that point. There's nothing that I can cite to or that anybody else can cite to that would show that that would occur. Thank you. Technically Mr. Laycock you have the right for a rebuttal since we have talked a little bit about invalidity. If you want to take 30 seconds if there's something that you must advise the court you may go ahead and speak briefly. There was an incorrect statement of law with respect to specific intent. It's not enough to just know or should know. You have to have the affirmative intent. That's not on the cross appeal issue so that's out of balance. I just conclude and ask this court to affirm the non-infringement conclusions. Thank you. Thank you. We thank both counsel. The case is submitted.